UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SEAN TATE,

    Plaintiff,

v.                                             Case No. 07-C-755

MATTHEW FRANK, et al.,

    Defendants.

**MEMORANDUM AND ORDER**

Plaintiff Tate, who is proceeding pro se, lodged a civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Plaintiff is currently incarcerated at the Wisconsin Resource Center.

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner plaintiff is required to pay the statutory filing fee of $350.00 for a federal lawsuit. If a prisoner does not have the money to pay the filing fee up front, he or she can request leave to proceed *in forma pauperis* in order to pay the fee over time. To proceed with an action *in forma pauperis*, the prisoner must complete a petition and affidavit to proceed *in forma pauperis* and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of twenty percent of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.[1]

---

[1] In no event will a prisoner be prohibited from bringing a civil action because he or she has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. He also filed the required affidavit of indigence. Further, he has been assessed and has paid an initial partial filing fee.

Upon review of the trust account statement and affidavit, I am satisfied that plaintiff is unable to pay the statutory filing fee in this case. Leave to proceed *in forma pauperis* therefore will be granted.

Next, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Plaintiff has filed a fifty page complaint naming more than thirty individuals. In general, Tate alleges a conspiracy to retaliate against him for making formal and informal complaints about prison staff. His first claim sets forth an incident in which he alleges defendants Zamzow, Perzentka and Buhrow trumped up a dispute so that plaintiff would be disciplined and sent to temporary lockup. This at least states a claim against these defendants. (Compl., ¶¶ 175-181.) The first claim also purports to state a claim against several other supervisory defendants and individuals involved in processing the plaintiff's complaints. Claims in this vein will be dismissed. The other defendants are under no obligation to conduct investigations or agree with the plaintiff's complaints merely because he raises issues with staff. Section 1983 requires personal involvement in the constitutional violation; if it were enough to allege that supervisors "turned a blind eye" or "condoned" the underlying actions, then every inmate § 1983 lawsuit would envelop the entire prison management. Without any more concrete allegations in the complaint, such claims will be dismissed.

Second, Tate claims Zamzow and Buhrow violated his right to due process when they submitted false documents in his disciplinary proceedings. He also alleges defendants Heft, Capt. Wess and Kuhn violated due process when they refused to allow him to present video evidence during his hearing. Tate further alleges that Kuhn falsified a record. (Compl., ¶¶ 182-186.) Due

3

process protections only come into play when the prisoner is facing punishment that exceeds the ordinary incidents of prison life. *Sandin v. Conner,* 515 U.S. 472, 484 (1995). It is not clear whether Tate has alleged such a deprivation, but his due process claim is subject to dismissal if the defendant can show that no liberty interest was at stake.

Plaintiff's third constitutional claim (which he confusingly calls, like the first claim, "First Constitutional Cause of Action") states that several defendants retaliated against him for his complaints, at least one of which was made to Rep. Gwen Moore. (Compl., ¶¶ 92-94, 192-196.) Defendants Engebretsen and Jenkins are alleged to have written a false conduct report, while defendants O'Brien, Jenkins, Hauke, Eickhoff and Heferman are alleged to have retaliated against Tate by having him transferred from a medium custody prison to a maximum custody facility. The claim against Hauke will be dismissed, as it seems based merely on an interview Hauke conducted while Tate was "sleepy." (Compl, ¶ 108, 110.) He also alleges that defendants Stahol, Janssen, Butyne, Galligan, Benson and Schuler retaliated against him by confiscating evidence and legal papers and interfering with his ability to make further complaints or exhaust his administrative remedies. (Compl., ¶¶ 195, 200.) These retaliation claims at least state a claim for which relief may be granted; as above, however, he also alleges that supervisory staff "turned a blind eye" to the retaliation. Without any allegation of actual personal involvement, such claims will be dismissed.

Tate's fourth claim (called "Second Constitutional Cause of Action") alleges that defendants O'Brien, Hanser and Jenkins violated his right to due process when they did not allow plaintiff to obtain witnesses for his hearing on February 16, 2007 (Compl., ¶¶ 96-102, 198.) It appears Tate received (after an appeal to the warden) 120 days in disciplinary segregation. This seems to have led to him losing his medium security status and being recommended for maximum custody at

4

Columbia Correctional. (Compl., ¶¶ 113-114.) He was actually transferred to the Wisconsin Resource Center. Again, it is unclear from the complaint whether due process was implicated by these events; if the defendants can show that no liberty interest was at stake, the due process claim will be dismissed. In addition, this "claim" also includes a paragraph that seems to repeat the allegations in the earlier claim involving the confiscation of Tate's property and papers. (Compl., ¶ 200.) As with the other claims, the allegations against management officials and those working in the ICRS will be dismissed. (Compl., ¶ 199, 202.) Similarly, the claim asserted in paragraph 201 will be dismissed: it asserts some sort of condoning of certain conditions by the individuals who authorized plaintiff's transfer to maximum security. As there is no protected liberty interest in any particular level of custody, this allegation also fails to state a claim.

In sum, as discussed above, the claims allowed to proceed are the retaliation claims and the claims alleging violations of due process. The claims against those acting only in a supervisory or reviewing capacity are dismissed. Nor does the complaint present a basis for challenging the entire inmate complaint system merely because the plaintiff's own complaints were not handled as he wished. As such, to be clear, all claims against the following defendants are dismissed: Frank, Hautamaki, Gozinske, Endicott, Sally Wess, Todd-Barth, Hermann-Pucker, Hauke, Heise, the "Joint Committee for Review of Administrative Rules" and any other defendant named only by his or her initials. The other claims, as described above, survive.

**IT IS ORDERED** that plaintiff's request to proceed *in forma pauperis* is granted.

**IT IS ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to twenty

5

percent of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10.00 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint, a waiver of service form and/or the summons, and this order upon the defendant pursuant to Fed. R. Civ. P. 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting to make such service. 28 U.S.C. § 1921(b). The current fee for waiver-of-service packages is $8.00 per item. The full fee schedule is provided in 28 C.F.R. § 0.114(a)(2), (a)(3). Even though Congress requires the court to order service by the U.S. Marshals Service when an impoverished person is permitted to proceed *in forma pauperis*, Congress has not provided for these fees to be waived, either by the court or the U.S. Marshals Service.

**IT IS ORDERED** that the defendants shall file a responsive pleading to the plaintiff's complaint.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that, from now on, he is required, under Fed. R. Civ. P. 5(a), to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any

6

documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the clerk of court's office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Nothing in this order or in § 1915A precludes a defendant from moving to dismiss any claim identified in this order or potentially existing in the complaint if the defendant disagrees with my analysis or believes I have overlooked something during my screening.

Dated this   3rd   day of October, 2007.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge